# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| TIA REEVES,<br>    Plaintiff, | Case No. 1:13-cv-325<br>Spiegel, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | REPORT AND<br>RECOMMENDATION |

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) finding her disability ceased on December 1, 2009 and she no longer qualified for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed applications for benefits in October 2003, alleging disability due to a seizure disorder. Plaintiff's applications were granted with an onset date of October 21, 2003. (Tr. 83, 91). The Commissioner conducted a continuing disability review and based on that review the Commissioner determined that plaintiff's disability ceased on December 1, 2009, because her seizure activity is not frequent enough to be considered disabling. (Tr. 102-05).

This determination was upheld upon reconsideration by a state agency Disability Hearing Officer. (Tr. 105-15). Proceeding pro se, plaintiff requested and was granted a de novo hearing before an administrative law judge (ALJ). Shortly before the hearing, plaintiff secured counsel to

represent her at the hearing. On June 21, 2011, ALJ Gregory G. Kenyon held a hearing at which plaintiff and a vocational expert (VE) appeared and testified. On September 16, 2011, the ALJ issued a decision finding that plaintiff's disability ended as of December 1, 2009, and that she has not become disabled again since that date. (Tr. 22-37). Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Applicable Law

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *White v. Commissioner of Social Sec.*, 572 F.3d 272, 281 (6th Cir. 2009) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

2

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen,* 478 F.3d at 746). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004).

When, as here, a recipient of disability benefits challenges the cessation of benefits, the central issue is whether the recipient's medical impairments have improved to the point where she is able to perform substantial gainful activity. 42 U.S.C. § 423(f)(1); *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007). Whether an individual's entitlement to benefits continues depends on whether "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work." 20 C.F.R. §§ 404.1594(b), 416.994(b).

The cessation evaluation process is a two-part process. *See Kennedy*, 247 F. App'x 764-65. The first part of the process focuses on medical improvement. *Id.* at 764. The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled." *Id.* at 764-65 (citing 20 C.F.R. § 404.1594(b)(1)). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the individual's] impairment(s). . . . 20 C.F.R. §§ 404.1594(b)(1)(i), 416.994(b)(1)(i). If there has been a decrease in the severity of the impairments since the favorable decision, the medical improvement is related to the individual's ability to work only if there has been a corresponding 'increase in [the claimant's] functional capacity to do basic work

3

activities. . . .'" *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(b)(3)). *See also Nierzwick v. Commissioner of Social Security*, 7 F. App'x 358, 361 (6th Cir. 2001).

Medical improvement is "determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. §§ 404.1594(b)(2), 416.994(b)(2). Under Sixth Circuit law, the date of the most recent ALJ hearing, not the cessation of benefits date, is the relevant point of comparison for determining medical improvement subsequent to the initial award. *Difford v. Secretary of Health & Human Services*, 910 F.2d 1316, 1320 (6th Cir. 1990). That is, the ALJ must consider the plaintiff's condition at the time of the ALJ hearing and if the evidence shows she was disabled as of that date, her benefits should continue even if she was not disabled as of the cessation date. *McNabb v. Barnhart*, 340 F.3d 943, 944 (9th Cir. 2003) (citing *Difford*, 910 F.3d at 1319-20).

The second part of the cessation analysis focuses on whether the individual has the ability to engage in substantial gainful activity. *Kennedy*, 247 F. App'x at 765. The implementing regulations for this part of the evaluation incorporate many of the standards set forth in the regulations that govern initial disability determinations. *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7)). The difference is that "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Id.* (citing 20 C.F.R. § 404.1594(b)(5) and (f)(7); *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8).

In deciding whether a recipient's entitlement to disability benefits has ended, the Commissioner uses the eight-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1594(f)(1)-(8) and 416.994(f)(1)-(8). *Kennedy*, 247 F. App'x at 764. The steps are:

> (1) Are you engaging in substantial gainful activity? If you are . . . we will find disability to have ended. . . .
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? . . . .
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section. . . .
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. . . .
>
> (6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe. . . .
>
> (7) If your impairment(s) is severe, . . . we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.
>
> (8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment. . . . If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

20 C.F.R. §§ 404.1594(f), 416.994(f).

There is no presumption of continuing disability. *Kennedy*, 247 F. App'x at 764 (citing *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 286-287 n. 1 (6th Cir. 1994)).

5

Instead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work. *Id.*

## III. The ALJ Decision

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The most recent favorable medical decision finding that the [plaintiff] was disabled is the determination dated December 24, 2003. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the [plaintiff] had the following medically determinable impairment: a seizure disorder. This impairment was found to meet section 11.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
>
> 3. Medical improvement occurred as of December 1, 2009 (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).
>
> 4. As of December 1, 2009, the date the [plaintiff]'s disability ended, the [plaintiff] had not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).
>
> 5. The medical evidence establishes that, as of December 1, 2009 and continuing through the present, the [plaintiff] had the following medically determinable impairments: a seizure disorder; obesity; depression; and borderline intellectual functioning.
>
> 6. Since December 1, 2009, the [plaintiff] has not had an impairment or combination of impairments which meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
> 7. After careful consideration of the entire record, the undersigned finds that, beginning on December 1, 2009, the [plaintiff] has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the [plaintiff] could occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. Further, the [plaintiff] is limited to indoor work that does not require exposure to extreme heat or hazards such as unprotected heights or dangerous machinery. The [plaintiff] also should not drive automotive equipment. Additionally, the [plaintiff] is limited to unskilled, simple repetitive tasks in an environment involving little, if any, change in job duties from one day to the next and which does not require rapid production-pace

work. Finally, the [plaintiff] should have only occasional contact with co-workers, supervisors, and the general public.

8. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

9. On December 1, 2009, the [plaintiff] was a younger individual age 18-49 (20 CFR 404.1563 and 416.963).

10. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

11. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

12. Beginning on December 1, 2009, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, the [plaintiff] has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).[1]

13. The [plaintiff]'s disability ended on December 1, 2009, and the [plaintiff] has not become disabled again since that date (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii)).

(Tr. 27-36).

## IV. Specific Errors

On appeal, plaintiff contends that a remand under Sentence Four of 42 U.S.C. § 405(g) is warranted because the ALJ's residual functional capacity finding is not supported by substantial evidence. Plaintiff contends: 1) the ALJ improperly determined that the record documented only four seizures between April and September 2008, and that no seizures were documented after March 8, 2010; 2) the ALJ improperly found that plaintiff failed to demonstrate that she had an ongoing relationship with a treating source when in fact plaintiff has treated with the Aring Neurology Clinic at University Hospital since 2007 and has treated specifically with neurologist

---

[1] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 3,150 unskilled, light jobs in the regional economy, including jobs as a clerical support worker, quality control worker, and stock clerk/order clerk. (Tr. 36, 77).

7

Dr. Privitera; and 3) Dr. Privitera did provide an Adequate Description of Seizures. In the alternative, plaintiff maintains that remand is appropriate pursuant to Sentence Six of 42 U.S.C. § 405(g) due to new and material evidence. (Doc. 13).

**V. This matter should be remanded for further proceedings under Sentence Four of 42 U.S.C. § 405(g).**

Plaintiff was previously found disabled effective December 24, 2003, based on a seizure disorder. Plaintiff has a history of seizures since 1993 with repeated medication adjustments and breakthrough seizures despite medication. (Tr. 86, 91). In December 2009, the Social Security Administration determined that plaintiff's seizure disorder had improved and that she was no longer disabled. (Tr. 99).

The ALJ determined that plaintiff's claim for continuing disability benefits turned on the frequency of plaintiff's seizures, and the record did not support a finding of seizure activity at the level of frequency alleged by plaintiff. (Tr. 31, 80). Plaintiff contends the ALJ's decision in this regard is not supported by substantial evidence. The Court agrees.

The record before the ALJ included treatment notes from plaintiff's treating neurologist, Dr. Privitera, up through March 2010. At the June 2011 hearing, the ALJ indicated that he wished to see the updated records from plaintiff's treating neurologist and a copy of plaintiff's seizure diary, which she briefly testified about at the hearing. (Tr. 59). Plaintiff's seizure diary was entered into the record as Exhibit 25E (Tr. 256-261). The seizure diary is a chronological log from August 4, 2007 through June 18, 2011, which documents by date and time of day plaintiff's episodes of seizure activity. Plaintiff wrote "seizure" or "dizzy" to distinguish between the types of seizures she experienced on any given day. *Id.* Plaintiff's seizure diary between December 1, 2009, the date of "medical improvement" found by the ALJ, and June 2011

8

(the month of the ALJ hearing) shows plaintiff experienced an average of over four seizures per month, with some of the seizures occurring on and off throughout the day, and some lasting for up to one to two hours. Inexplicably, the ALJ makes no mention of plaintiff's seizure diary in his decision, despite his comments on the record at the hearing and in his decision that plaintiff's continuing disability was dependent upon the frequency of her seizure activity and his expressed desire to see the seizure diary. Plaintiff, who began having seizures at the age of 12, testified she did not go to the hospital or see the doctor every time she had a seizure because she "pretty much know[s] what happens" and takes the Ativan prescribed by Dr. Privitera and lies down when she experiences seizures. (Tr. 62-63). Therefore, the seizure diary was an important piece of evidence that should have been considered by the ALJ in assessing the frequency of plaintiff's seizure activity. In the absence of any consideration of this evidence by the ALJ in his decision, the Court concludes the ALJ's decision is not supported by substantial evidence. This matter should be remanded to the ALJ for consideration of this evidence.

**VI. This matter should be remanded for further proceedings under Sentence Six of 42 U.S.C. § 405(g).**

Plaintiff seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for administrative consideration of new and material evidence submitted to the Appeals Council after the ALJ's decision. The evidence includes: (1) records from Dr. Privitera dated June 8, 2010 through September 6, 2011; (2) records from University Hospital dated November 18-24, 2010; (3) records from Centerpoint Health dated March 26, 2009 through August 2, 2012; (4) records from Dr. Cheng dated July 16, 2009; (5) records from Dr. Jette dated November 4, 2009 through December 1, 2011; (6) plaintiff's Seizure Journal dated August 4, 2007 through October 10, 2012; (7) Dr. Privitera's seizure residual functional capacity questionnaire dated November 20,

2012; and (8) records from multiple sources dated April 5, 2005 through October 6, 2011. Plaintiff argues that most of these records are new because they cover the time frame of March 2010 through September 2011 and were not included in the administrative record before the ALJ. Plaintiff contends the records are material because they include detailed information on the type, frequency, and character of plaintiff's seizures, which the ALJ noted were not adequately documented in the record.

The Court finds plaintiff's request to be well-taken and that a remand under Sentence Six is appropriate in this case.

"The district court can . . . remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citations and internal quotation marks omitted). To show "good cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id. See also Oliver v. Sec'y of H.H.S.*, 804 F.2d 964, 966 (6th Cir. 1986); *Willis v. Sec. of H.H.S.*, 727 F.2d 551, 554 (6th Cir. 1984).

The additional evidence submitted to the Appeals Council includes treatment records and reports from plaintiff's treating neurologist, Dr. Privitera. Dr. Privitera's treatment records from

June 2010 through September 2011 show plaintiff experienced complex partial seizures, generalized tonic-clonic seizures, and simple partial seizures. (Tr. 426-458). On October 6, 2011, Dr. Privitera reported that plaintiff has medication-resistant seizures which occur 1 to 6 times per month, despite the fact that plaintiff has tried nearly-toxic doses of several different anti-epileptic medications. According to Dr. Privitera, plaintiff "does have a diagnosis of complex partial intractable epilepsy." (Tr. 544). On November 20, 2012, Dr. Privitera reported that plaintiff experienced both complex partial and grand mal seizures. He reported that plaintiff averaged four seizures per month in 2009 and 2010. Dr. Privitera also reported that currently plaintiff has an average frequency of four seizures per month. He noted that plaintiff has a five-minute warning before an impending seizure, and he indicated that stress is a precipitating factor. He reported that plaintiff's postictal manifestations include confusion, which lasts for 15 minutes after a seizure, and poor concentration. Dr. Privitera acknowledged that plaintiff's seizure activity would likely disrupt co-workers and that she would require more supervision than unimpaired workers. He concluded that plaintiff would miss work an average of four days per month as a result of her seizures. (Tr. 505-08).

The evidence submitted to the Appeals Counsel also includes an EEG monitoring report that confirmed plaintiff experienced three partial seizures in the span of four days. A prolonged video EEG monitoring at the Cincinnati Epilepsy Center from November 14-18, 2010 captured three partial seizures, which confirmed the epileptic nature of plaintiff's "habitual events" and indicated that they are partial onset seizures. (Tr. 461). In November 2010, David Ficker, M.D., who interpreted the EEG and also examined plaintiff, diagnosed her with intractable

epilepsy with continued spells of dizziness. He opined that plaintiff had complex partial seizures because some of her dizziness was associated with staring episodes. (Tr. 463-64).

The Appeals Council evidence also includes plaintiff's updated seizure diary. (Doc. 520-528). From July 2011 through October 10, 2012, plaintiff recorded on average more than five seizures per month, with as many as 10 and 11 seizures some months. (Tr. 524-528). Her symptoms included blackouts, dizziness, headaches, hand tremors, and tongue biting. (*Id.*) Her dizziness at times lasted up to one-half to one full day. (*Id.*)

While some of the evidence plaintiff presented to the Appeals Council was in existence at the time of the ALJ hearing, the October 2011 and November 2012 reports from treating neurologist Dr. Privitera and the updated seizure diary were not. Because this evidence was not in existence at the time of the ALJ hearing, these records constitute new evidence for purposes of plaintiff's request for a Sentence Six remand. *Foster,* 279 F.3d at 357.

The evidence is material because it shows that the frequency of plaintiff's seizures was actually greater than found by the ALJ, who relied on pre-March 2010 evidence, and provides confirmation of the etiology of plaintiff's "dizzy" spells. Dr. Privitera's notes indicate that initially it was not clear whether plaintiff's dizziness was due to her medication or seizure activity. (Tr. 427: in February 2011 it was "still unclear if these are simple partial seizure or adverse effects" of medications). However, by plaintiff's September 6, 2011 examination, Dr. Privitera had concluded that plaintiff's "'dizzy' spells are simple partial seizures/CPS [complex partial seizure]" and that insomnia, for which plaintiff had been treated for several months, "may be triggering more seizures." (Tr. 430). This record, along with plaintiff's updated seizure diary, Dr. Privitera's October 2011 report, and Dr. Privitera's November 2012 report (in which he opines that plaintiff had an average of four seizures per month), corroborate the frequency of

12

plaintiff's seizure activity and its effect on plaintiff's ability to sustain substantial gainful activity. The frequency of plaintiff's seizure activity is material to plaintiff's continuing disability claim because if the ALJ had credited Dr. Privitera's opinion that plaintiff would likely miss on average four days per month from work as a result of her seizures and/or treatment, plaintiff would be unable to perform the jobs identified by the vocational expert at the hearing. (Tr. 79, 80).

These records are material for additional reasons. The ALJ concluded that the "last documented evidence of seizure related treatment" was contained in Dr. Privitera's March 8, 2010 treatment note. (Tr. 32). The ALJ thereby gave the impression that from March 2010 through the date of the ALJ decision, September 16, 2011, plaintiff experienced no seizure activity. The new evidence submitted by plaintiff clearly shows that plaintiff's seizures continued well beyond March 2010 and in fact increased in frequency.

The ALJ also concluded that plaintiff "certainly did not require ongoing treatment" and by plaintiff's "own admission" she was only scheduled to meet with her neurologist one time per year. (Tr. 32). Contrary to the ALJ's findings, after the "medical improvement" date of December 1, 2009, plaintiff was treated by Dr. Privitera four times in 2010 and four times in 2011, with the last visit being September 6, 2011. (Tr. 365, 426-431, 432, 437, 438, 444, 449, 454). Therefore, the Court determines the new evidence presented by plaintiff is material because there is a reasonable probability that the ALJ would have reached a different disposition of plaintiff's claim for continuing disability benefits if he had been presented with such evidence.

The Court also finds good cause for a Sentence Six remand. The October 2011 and November 2012 reports from treating neurologist Dr. Privitera, the September 6, 2011 neurology

progress record[1], and the updated seizure diary were not available at the ALJ hearing. *See Fazio v. Heckler*, 750 F.2d 541, 542-543 (6th Cir. 1984) ("Good cause" exists because this evidence was simply not available at the ALJ hearing."); *Wilson v. Sec'y of H.H.S.*, 733 F.2d 1181, 1182-83 (6th Cir. 1984) (same). This evidence directly bears on the frequency of plaintiff's seizures, the central issue in the continuing disability determination.

In addition, plaintiff was proceeding pro se until very shortly before the ALJ hearing (Tr. 147) and the record was not fully developed. At the hearing, the ALJ acknowledged that "clearly this case comes down to the frequency of the seizures. I'd like to see what those updated records hold and I'd also like a copy of Ms. Reeves' seizure diary." (Tr. 80). It is not clear why the updated records were not produced before the ALJ issued his decision. Although it appears that counsel agreed to obtain these records, the ALJ likewise had a duty to ensure a complete record was developed in this case because unlike initial disability proceedings, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy*, 247 F. App'x at 765. The record fails to reflect whether the ALJ made any attempt to obtain the updated records that the ALJ himself noted were the deciding factor in plaintiff's termination claim. Under the circumstances of this case, and given the Commissioner's burden of proof in termination proceedings, it was incumbent upon the ALJ to obtain the updated records for the relevant time period and to consider all of the relevant evidence, including plaintiff's seizure log, in assessing the frequency of plaintiff's seizures and her medical improvement. *Id.* Thus, good cause exists for a Sentence Six remand in this matter for consideration of the new and material evidence presented to the Appeals Council.

---

[1] Although this progress note pre-dates the ALJ's decision by ten days and was obviously "in existence" at the time of the ALJ's decision, it is highly unlikely that plaintiff would have been able to secure this record in time for the ALJ's decision ten days later.

Accordingly, a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) for further administrative proceedings in light of the evidence presented to the Appeals Council is warranted. Plaintiff's request for a Sentence Six remand should be granted.

**VII. This matter should be reversed and remanded for further proceedings.**

This case involves both a Fourth Sentence and a Sixth Sentence remand under § 405(g). Under Sentence Four of § 405(g), the Court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." Here, a remand under Sentence Four is appropriate because "all of the essential factual issues have not yet been resolved." *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

In a Sentence Six remand, the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher*, 17 F.3d at 174 (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)). Instead:

> [T]he court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding. The statute provides that following a sentence six remand, the Secretary must return to the district court to "file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

*Melkonyan*, 501 U.S. at 97-98 (citations omitted). As discussed above, a Sixth Sentence remand is warranted to allow for consideration of the evidence submitted by plaintiff to the Appeals Council and the impact on plaintiff's continuing disability claim.

Where a remand is warranted under both Sentence Four and Sentence Six, the Court may remand under both grounds. As explained by the Eleventh Circuit:

> To summarize, after reviewing § 405(g) and the applicable case law, . . . if both sentence-four and sentence-six grounds for remand exist in a disability case, the

15

case may be remanded on both grounds. District court jurisdiction over the case continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. In such a case, the claimant may wait until the post-remand judgment is entered before filing his EAJA application.

*Jackson v. Chater,* 99 F.3d 1086, 1097-98 (11th Cir. 1996). Other courts have likewise concluded that "dual basis" remands are appropriate in instances similar to the case at hand pursuant to both Sentence Four and Sentence Six. *See, e.g., Banik v. Comm'r of Soc. Sec.*, No. 1:11-cv-342, 2012 WL 2190816 (S.D. Ohio June 14, 2012), *adopted*, 2012 WL 2890890 (S.D. Ohio July 16, 2012); *Bradley v. Barnhart,* 463 F. Supp.2d 577, 583 (S.D. W.Va. 2006).

Accordingly, it is recommended that this matter be reversed and remanded for further proceedings consistent with this decision under Sentence Four of Section 405(g) and under Sentence Six of Section 405(g).

## IT IS THEREFORE RECOMMENDED THAT:

1. The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g); and

2. This matter be **REMANDED** pursuant to Sentence Six of 42 U.S.C. § 405(g).

Date: 5/29/14

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

TIA REEVES,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-325
Spiegel, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).